[Civ. No. 44647. Second Dist., Div. Two. Sept. 10, 1975.]

HENRIETTE T. MARTIN, Plaintiff and Appellant, v.
PHIL KEARNEY et al., Defendants and Respondents.

## COUNSEL

Arthur A. Corrales for Plaintiff and Appellant.

Timothy M. O'Connor and Robert Alden Welbourn for Defendants and Respondents.

## OPINION

**FLEMING, J.**—Libel action by Henriette Martin, a public school teacher, against the Kearneys and the Bracketts, parents of two of Martin's students. The action complains of defendants' letters to the school principal which questioned Martin's classroom conduct and her fitness to teach typing to high school students. The trial court granted defendants a judgment on the pleadings, and Martin has appealed.

Martin's complaint alleged: On 15 February 1972 defendants "with intent to injure plaintiff in her reputation and occupation, maliciously published, among and to various persons including plaintiff's superiors and employers, letter[s] addressed to plaintiff's superior, Mr. Edward C. Moore, Principal of Palos Verdes High School." The letters falsely stated that Martin had displayed an utter lack of judgment or respect, had been rude, vindictive and unjust, misused her authority and had given failing grades to students she did not like. One letter stated, "We are sending you this information . . . in the hope that either Miss Martin is able to correct her personality defects (with or without professional assistance) or in the future will teach adults who perhaps can cope with her problems." Defendants knew these statements were untrue and published them for the purpose of exposing plaintiff to hatred, contempt, ridicule, and obloquy in order to injure her in her occupation. Defendants harbored ill-will toward plaintiff and intended by their letters to vex, harass, and annoy her. They published their statements

with malicious, wanton recklessness and heedlessness for plaintiff's reputation, with intent to injure her in her occupation and bring her into public disgrace and disrepute.

■ We agree with the trial court that the complaint fails to state a cause of action for libel. On its face the complaint shows that the assertedly libelous statements were publications in an official proceeding as well as communications between interested persons and hence were both absolutely and qualifiedly privileged.

1. *Absolute Privilege.* Civil Code section 47, subdivision 2, provides that a publication is absolutely privileged if made in any official proceeding authorized by law. "[A] communication to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the 'official proceeding' as a communication made after the proceedings have commenced." (*King* v. *Borges,* 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414]; *Ascherman* v. *Natanson,* 23 Cal.App.3d 861 [100 Cal.Rptr. 656].) Defendants, the parents of Martin's students, sent to her superior officer and to her employer letters designed to prompt official action with respect to Martin's conduct as a public school teacher. The trial court could take judicial notice (cf. Code Civ. Proc., § 430.70; Evid. Code, § 452, subd. (d)) of Palos Verdes School Board rules which require such communications to be in writing:

*"Citizens Complaints Against Certificated Personnel*

"The normal procedure for handling complaints about certificated personnel shall be to encourage the complaining party to begin with the source of his complaint (teacher, administrator, supervisor).

"If the problem is not handled satisfactorily at this level, informal discussion is to be continued through the office of the principal or immediate supervisor. The party shall have the right to seek a solution through district administration channels, with the final appeal going to the Board of Education.

"All complaints that go beyond the level of the principal or immediate supervisor shall be reduced to writing and all parties to the complaint be given a copy of the complaint."

2. *Qualified Privilege.* Civil Code section 47, subdivision 3, provides for a qualified privilege in a "communication, without malice, to a person

interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." The existence of this qualified privilege is evident from the allegations of the complaint and the attached letters themselves. As parents of school children, defendants were interested persons directing their communications to other interested persons, the school officials. The complaint sets out routine general allegations of malice in order to defeat the qualified privilege, but more than general allegations of malice are required. Actual facts of malice must be alleged or be apparent from the communications themselves. (*Everett* v. *California Teachers Assn.*, 208 Cal.App.2d 291, 295 [25 Cal.Rptr. 120].) No facts establishing malice appear in the complaint.

We do not intend to suggest that privilege attaches to every libel of a public school teacher or administrator. (Cf. *Larive* v. *Willitt,* 154 Cal.App.2d 140 [315 P.2d 732]; *Oberkotter* v. *Woolman,* 187 Cal. 500 [202 P. 669].) But in this case parents of school children were seeking redress against their children's teacher through appropriate school channels. One of the crosses a public school teacher must bear is intemperate complaint addressed to school administrators by overly solicitous parents concerned about the teacher's conduct in the classroom. Since the law compels parents to send their children to school, appropriate channels for the airing of supposed grievances against the operation of the school system must remain open. (Cf. *Scott* v. *McDonnell Douglas Corp.,* 37 Cal.App.3d 277, 289-290 [112 Cal.Rptr. 609].)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.