[No. B176757. Second Dist., Div. Six. Nov. 29, 2005.]

MICHAEL LEE, Plaintiff and Appellant, v.
CHARLES L. FICK et al., Defendants and Appellants.

## COUNSEL

Taylor McCord & Praver, Robert L. McCord; Lascher & Lascher and Wendy C. Lascher for Plaintiff and Appellant.

Ault, Davis & Schonfeld, Corinne Coleman Bertsche and Paul W. Smigliani for Defendants and Appellants.

## OPINION

**GILBERT, P. J.**—Parents of high school baseball players urge school officials to fire the coach. The coach sues the parents for libel, slander and interference with prospective economic advantage. The parents bring a special motion to strike (hereafter "anti-SLAPP motion" [strategic lawsuit against public participation]) pursuant to Code of Civil Procedure section 425.16.[1]

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

Here we hold that discussions among the parents in preparation for their complaints before school officials are privileged under Civil Code section 47, subdivision (b). This in turn brings the coach's complaint within the anti-SLAPP motion.

The trial court granted the motion on one cause of action and denied it for the others. Both sides appeal. We affirm the grant, and reverse the denials.

## FACTS

Michael Lee is a certified teacher at Newbury Park High School (NPHS). He was hired to coach the NPHS varsity baseball team beginning in 2001. His first amended complaint named as defendants Charles and Kathleen Fick and four other parents of players Lee had coached. Only the Ficks are subject to this appeal.

Lee's first cause of action, for libel, alleged that on or about May 22, 2003, the Ficks published a letter making false statements about him. The letter stated:

"a. He is manipulative to the players, the parents and the other coaches.

"b. He is verbally abusive to the kids.

"c. He is emotionally abusing the kids with his outbursts of anger and favoritism to certain players.

"d. There were players who quit during the season because they couldn't deal with him.

"e. The man threw a fit in the dugout and verbally attacked my son for not respecting his authority.

"f. Who knows what he is capable of next because of his emotional and mental instability.

"g. He does not stop his destructive behaviors even when warned by parents and administrators."

The complaint also alleged the other defendants published letters containing similar statements. The complaint alleged that the letters were an attempt to have Lee removed as baseball coach, and were published to the Conejo Valley Unified School District (School District), among others.

Lee's third cause of action, for slander, alleged the Ficks said the following about Lee between February 6 and June 30, 2003:

"a. He is a bad coach and we want to have him fired.

"b. He is unethical.

"c. He has severe anger and emotional and anger problems.

"d. He is abusive verbally and physically to players."

Lee alleged the other defendants made similar comments, and that at least eight people heard "various words" spoken by the defendants.

In both the cause of action for libel and the cause of action for slander, Lee alleged that the defendants acted with malice and caused him to lose his job and future employment opportunities.

Lee's fifth cause of action is for conspiracy to interfere with prospective economic advantage, and the sixth cause of action is for intentional interference with prospective economic advantage. They are based on the same acts alleged in the first and third causes of action.[2]

The Ficks filed an anti-SLAPP motion. Kathleen Fick submitted a declaration in support of the motion. Fick declared: Her son, Chuckie, is a senior at NPHS and a member of the school's baseball team. In February of 2003, during one of the first games of the season, Lee became angry when Chuckie "shook off" Lee's signs. Lee verbally and physically threatened Chuckie, poking a finger in his chest. Fick later complained to the school's athletic directors.

Other incidents between Lee and Chuckie occurred in March and April of 2003. Fick made several oral complaints to school officials, including to Principal Max Beamon. Beamon told Fick to put her complaint in writing. As a result, Fick wrote a letter dated May 22, 2003. The letter is addressed "To Whom It May Concern." The alleged libelous statements contained in Lee's first cause of action are taken from the letter.

Fick declared the letter was hand delivered to the School District by Kandi Dunning, another defendant, who delivered all the letters of concerned

---

[2] Lee alleged a seventh cause of action against Charles Fick and his employer, the Saint Louis Cardinals, LLC, for assault. The seventh cause of action was neither part of the Ficks' anti-SLAPP motion, nor is it part of this appeal.

parents to the School District.[3] Fick stated the letter is a formal complaint to the school. She never provided the letter to any other person.

Fick declared that she made the statements alleged in Lee's third cause of action, for slander, to school officials. She stated that she may have made some of the statements to parents of other baseball players as she discussed her concerns about Lee's conduct, but she has no specific recollection of having done so. She denied she made any such statements to newspaper reporters.

In spite of the letters, Lee was rehired in early June of 2003. After an incident between Fick's husband and Lee, the Ficks had another meeting with school officials, including Principal Beamon. At that meeting, Fick told Beamon that if Lee was not fired she would transfer Chuckie to another school.

Chuck Fick declared that he had no part in the preparation of the May 22, 2003, letter his wife sent to the School District. Nevertheless, he agreed with the statements in the letter. He also declared he never voiced any of the statements alleged in the cause of action for slander to anyone other than school officials.

Lee submitted an affidavit in opposition to the motion. He declared: He was hired to coach baseball at NPHS in June of 2001. He began teaching health at the school in 2002. Chuckie Fick began playing on the team for the 2003 season. Some parents were already working to get Lee fired. Chuckie was rude to the coaches and had a bad attitude. Nevertheless, Lee denied he physically or verbally abused Chuckie or any other player. When Lee read the letters the parents had submitted to the School District, he could not believe what the parents were saying. After the season was over, school officials conducted a four-week investigation. Thereafter, Lee was rehired as baseball coach for the 2003–2004 season on June 4, 2003. The Ficks met with Principal Beamon on June 24, 2003. Lee was not allowed to be present. On July 3, 2003, Beamon terminated Lee as head coach.

The trial court granted the Ficks' anti-SLAPP motion as to the first cause of action for libel. The court determined the cause of action implicates the

---

[3] The only evidence that Fick gave the letter to another person to deliver to the School District is Fick's statement in her declaration, "It is my understanding that the letter was hand delivered to the [School District] by Kandi Dunning when she delivered all the letters from concerned parents to the [School District]." The trial court sustained Lee's objection to the statement on the grounds of lack of foundation, speculation and hearsay. Yet, Lee raises Fick's handing the letter to Dunning as an issue on appeal. We presume for the purposes of appeal Lee has waived the objection.

Ficks' right to petition and free speech, and is absolutely privileged under Civil Code section 47, subdivision (b).

The trial court denied the Ficks' anti-SLAPP motion as to the third, fifth and sixth causes of action. The court determined those causes of action were based in part on conduct that occurred after the school acted on the Ficks' complaint and decided to retain Lee as coach for the upcoming school year. The court concluded such statements did not concern a matter of public interest nor were they privileged.

## DISCUSSION

### I

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ Section 425.16, subdivision (e)(1) provides that an act in furtherance of a person's right of petition or free speech includes, "any written or oral statement . . . made before a . . . judicial proceeding, or any other official proceeding authorized by law . . . ."

■ A motion pursuant to section 425.16 requires a two-step analysis. First, the court must decide whether the defendant has made a threshold showing that the challenged causes of action arise from a protected activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) A defendant meets this burden by showing the acts alleged in plaintiff's causes of action fit into one of the categories stated in section 425.16, subdivision (e). (*Navellier, supra*, at p. 88.) If the court determines the defendant has made such a showing, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*)

In order to establish a probability of prevailing on the claim, plaintiff must show the complaint is sufficient and is supported by facts sufficient to sustain a judgment in plaintiff's favor. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) The trial court does not weigh the competing evidence. (*Ibid.*) Instead, the court should grant the motion if, as a matter of law, the defendants' evidence in support of the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. (*Ibid.*)

Our review is de novo on both prongs of the anti-SLAPP statute. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215].)

## II

Lee contends the trial court erred in granting the Ficks' motion as to the first cause of action.

The first cause of action alleges libel arising from the letter Fick sent to the school board. In concluding that the alleged libel is privileged under Civil Code section 47, subdivision (b), the court implicitly found that both prongs of the two-part analysis required by section 425.16 had been satisfied. That is because the "official proceeding[s]" provision of section 425.16, subdivision (e)(1) has language parallel to that contained in the "official proceeding[s]" provision of Civil Code section 47, subdivision (b).

█ Civil Code section 47, subdivision (b) provides that any publication made in any "judicial proceeding" or "in any other official proceeding authorized by law" is privileged. The privilege is designed to provide the utmost freedom of communication between citizens and public authorities whose responsibility is to investigate wrongdoing. (*Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 733 [151 Cal.Rptr. 206].) Accordingly, communications to an official agency intended to induce the agency to initiate action are part of an "official proceeding." (*Id.* at p. 732.) Thus it is well settled that complaints to school authorities about a teacher or principal in the performance of his or her official duties are privileged. (*Id.* at pp. 731–735; *Martin v. Kearney* (1975) 51 Cal.App.3d 309 [124 Cal.Rptr. 281].)

█ Lee's evidence in opposition to the anti-SLAPP motion does not dispute that the letter was written pursuant to Principal Beamon's instruction to parents to put their complaints in writing; that the letter was delivered to the School District; that Fick did not provide the letter to any other person; that the letter was an attempt to have Lee removed as baseball coach; that school authorities investigated the complaint; that initially school authorities decided to rehire Lee as baseball coach; and that ultimately school authorities decided to remove Lee as coach. The inescapable conclusion is that the letter was written to prompt official action, and is privileged under Civil Code section 47, subdivision (b).

Lee cites *Picton v. Anderson Union High School Dist.* (1996) 50 Cal.App.4th 726, 737 [57 Cal.Rptr.2d 829], for the proposition that "[t]he primary factors which determine whether an administrative body possesses a quasi-judicial power for section 47(b) 'official proceeding' purposes are:

(1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts, and (3) whether its power affects the personal or property rights of private persons."

■ Lee presents no authority that the school officials lack any of these powers. Instead, Lee claims the informal meetings that occurred here do not qualify as quasi-adjudicatory hearings. But the privilege does not depend on what action, if any, the official agency takes on a complaint. The complaint itself is part of the official proceedings. (See *Brody v. Montalbano, supra*, 87 Cal.App.3d at p. 732 [communications to an official agency which are designed to induce the agency to initiate action are part of official proceedings].) Moreover, most disputes of every kind are resolved informally. Lee does not claim he requested a formal hearing. In fact, there is nothing to indicate Lee challenged the school's decision to remove him as coach in any way.

Lee argues the Ficks never intended to initiate any legally authorized proceedings. Lee points out that the letter was not addressed to a school official, but "To Whom It May Concern." But the address on the letter is not determinative. Fick's uncontradicted declaration is that she gave the letter to a parent to deliver to the School District and that Fick did not publish the letter to any other person. It is also undisputed that the letter was in fact delivered to the School District.

Lee points out that the letter did not request an investigation or hearing and did not ask for any action. But it is obvious from the content of the letter the Ficks were requesting that Lee be removed as coach. Lee's complaint even states the comments made in the parents' letters were "an attempt to cause the removal of Plaintiff from his position of coach . . . ." There is no requirement that a letter of complaint expressly request an investigation, hearing or that the agency take any particular action.

■ Finally, Lee attempts to make much of Fick's statement that she gave the letter to another parent to deliver to the school board. The parent to whom Fick gave the letter for delivery to the school board is a codefendant and one of the alleged coconspirators in a plot to get Lee removed. Simply giving the letter to another parent for delivery no more affects the privilege than if Fick had placed the letter in the mail for delivery by the postal service. Even if the other parent had read the letter, it would not affect the privilege. In order to be effective in pressing their complaints to school authorities, parents must be free to communicate with each other without fear of liability. (*Brody v. Montalbano, supra*, 87 Cal.App.3d at p. 734.) Such communications between interested parties are protected by the privilege. (*Ibid.*)

## III

The Ficks contend the trial court erred in denying their anti-SLAPP motion as to Lee's third, fifth and sixth causes of action.

Lee's third cause of action alleges slander. Fick's declaration that she made the alleged comments to school officials is uncontradicted. Also uncontradicted is Fick's declaration that she may have made some of the comments to parents of baseball players as she discussed her concerns about Lee's conduct. As we stated in our discussion of the first cause of action, such comments to school officials and interested parents are privileged. (See *Brody v. Montalbano, supra,* 87 Cal.App.3d at pp. 731–734.) Lee cannot avoid the privilege by characterizing the discussion among parents as gossip.

■ Lee claims that after school officials initially determined to retain him, the matter was no longer under consideration in any official proceeding. But the parents can ask the school officials to reconsider. A request for reconsideration is part of the official proceedings and is as privileged as an initial complaint. In any event, it is manifest that the school officials' decision to retain Lee as coach was not final. Within a short time, school officials decided to replace Lee. That was the final decision.

Lee claims that at a meeting on June 24, 2003, the Ficks were not seeking an adjudication or even an appeal. Instead, they made threats to remove Chuckie from school, to go to the newspapers and to file a lawsuit. But Lee cites no authority that such threats affect the privilege. Nor does he cite any authority that such threats are not protected by the right to petition and free speech.

■ We need not consider the Ficks' contention that the trial court erred in sustaining Lee's hearsay objection to portions of the Ficks' declarations. The Ficks argue the evidence is admissible to show they acted without malice. The privilege under Civil Code section 47, subdivision (b) is absolute. (*Brody v. Montalbano, supra,* 87 Cal.App.3d at p. 731.) Lack of malice is irrelevant.

The fifth and sixth causes of action are derivative of the first and third causes of action. It follows that the trial court should have also granted the Ficks' motion as to the fifth and sixth causes of action.

Finally, the Ficks as the prevailing party in the anti-SLAPP motion are entitled to attorneys' fees. (§ 425.16, subd. (c).) The amount of such fees is for the trial court to determine on remand.

The judgment (order) granting the anti-SLAPP motion as to the first cause of action is affirmed. The judgment (order) denying the motion as to the third, fifth and sixth causes of action is reversed. Costs are awarded to the Ficks.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied December 16, 2005, and on December 23, 2005, the opinion was modified to read as printed above. The petition of appellant Michael Lee for review by the Supreme Court was denied February 22, 2006, S140302.